UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:15-cv-61970-COHN/SELTZER

MICHAEL      KORETSKY,      FRANK
KORETSKY, INTERNATIONAL VIDEO
DISTRIBUTORS, LLC, BEAUMONT FUND,
LLC, and LONGMEADOW TRADING, LLC,

      Plaintiffs,

      v.

SEYFARTH SHAW LLP, JOHN E. ROGERS,
individually    and    d/b/a   ROGERS    &
ASSOCIATES,    JETSTREAM    BUSINESS
LIMITED, WARWICK TRADING, LLC, and
SUGARLOAF FUND, LLC,

      Defendants.

_____/

**DEFENDANT SEYFARTH SHAW LLP'S MOTION TO TRANSFER VENUE
PURSUANT TO 28 U.S.C. §1406(a) AND/OR MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT AND INCORPORATED
MEMORANDUM OF LAW IN SUPPORT**

Pursuant to Rules 12(b)(2) and (3) of the Federal Rules of Civil Procedure and Local

Rule 7.1, Defendant Seyfarth Shaw LLP ("Seyfarth") moves to transfer this case to the Northern

District of Illinois pursuant to 28 U.S.C. §1406(a) for lack of personal jurisdiction and improper

venue, or alternatively to dismiss the Amended Complaint (D.E. 32) as to Seyfarth.

**I.    Introduction**

Plaintiffs have sued Seyfarth (an Illinois based law firm) for malpractice.  While

Plaintiffs can attempt to seek redress for damages they claim were suffered as a result of

Defendants' alleged wrongdoings, they may only do so in accordance with Florida jurisdictional

law, the United States Constitution and federal venue rules.  None provides any basis for

Plaintiffs to sue Seyfarth in Florida.  Nevertheless, Plaintiffs seek to assert a claim for

malpractice against Seyfarth here, but without any factual basis that supports personal jurisdiction under Florida's long-arm statute.  Seyfarth has no offices here.  It took no actions in connection with Plaintiffs here.  It did not purposefully direct any actions to Plaintiffs here.  It provided the legal services at issue out of its Illinois office.   And it did not direct any communications to, or correspond with Plaintiffs in Florida.   Through the filing of their Amended Complaint, Plaintiffs continue to ignore the dictates and requirements of Florida's long-arm statute and applicable law, as well as Seyfarth's due process rights.

Recognizing the lack of any basis for specific personal jurisdiction, Plaintiffs now allege in the Amended Complaint, that Seyfarth is subject to general, as well as specific jurisdiction of this Court.   The alleged grounds for specific jurisdiction include the grounds alleged in the original Complaint – that Seyfarth allegedly committed a tort, and caused injury to Plaintiffs through its solicitation or service activities in this State – as well as a new alleged basis – that Seyfarth conducts business in Florida.  [D.E. 32, ¶7].  The alleged basis for general jurisdiction is that Seyfarth "has established itself in Florida as a home by its continuous and systematic general business contacts in Florida."  *Id*. at ¶8.   Plaintiffs have sprinkled a few new allegations purportedly connecting this action to Florida (*see id*. at ¶¶4, 7, 15, 38, 39, 41, 134), as well as attempted to identify "occasional general business" contacts between Seyfarth and this forum (*id*. at ¶8) – the same allegations this Court, in its October 19, 2015 Order, noted were insufficient to make "any colorable showing that the Court has general personal jurisdiction over the Defendants."  [D.E. 26].   Yet, the Amended Complaint still fails to establish any meaningful contacts between Seyfarth and Florida (or even between any of the Defendants and Florida) sufficient to subject Seyfarth to the specific or general jurisdiction of this Court.

All the legal services provided by Seyfarth to any of the Plaintiffs were provided out of Seyfarth's Illinois office.  None was purposefully directed by Seyfarth to the Plaintiffs in Florida.  In fact, when Seyfarth had any contact with any Plaintiffs, the only residential addresses Seyfarth had for them were in states other than Florida.  Because Plaintiffs cannot establish a proper basis to subject Seyfarth to the jurisdiction of the Florida courts and because Seyfarth lacks the minimum contacts with Florida necessary to satisfy due process requirements, this action should be transferred to the Northern District of Illinois, or alternatively the Amended Complaint against Seyfarth dismissed for lack of personal jurisdiction.  *See infra* §III.[1]

This Court should also transfer this action on the separate and independent ground that there is no basis for proper venue in this District.  *Id*. at §IV.  Venue is not proper in this forum under 28 U.S.C. §1391(b)(2) because Plaintiffs have failed to allege, and cannot establish that a substantial part of the acts complained of, directly giving rise to their claim against Seyfarth, occurred in this District or Florida at all.  Moreover, neither of the remaining bases of the venue statute (§§1391(b)(1), (3)) supports a finding of proper venue in this District.  Because proper venue cannot be established in this District, this action should be transferred to the Northern District of Illinois, the forum in which this action originally could have been filed by Plaintiffs.

---

[1]  Although dismissal of the Amended Complaint for lack of jurisdiction over a non-resident defendant is the customary relief, where the lack of jurisdiction is coupled with a finding of improper venue under §1406(a), the matter may be transferred to the proper forum, i.e., to a "district in which the case originally could have been brought, both with respect to venue and personal jurisdiction." *Hemispherx Biopharma, Inc. v. MidSouth Capital, Inc.*, 669 F. Supp. 2d 1353, 1359 (S.D. Fla. 2009) ["*Hemispherx*"] (quotations omitted); *see Miller v. Berman*, 289 F. Supp. 2d 1327, 1337 (M.D. Fla. 2003) (finding that the Court lacked personal jurisdiction over defendants and that venue was improper in Florida, and nonetheless transferring the action to the Eastern District of Pennsylvania pursuant to 28 U.S.C. §1406(a) where the defendants reside and venue is proper).

Keller Landsberg PA
Broward Financial Centre, 500 E. Broward Boulevard, Suite 1400, Fort Lauderdale, FL  33394

## II.    The Amended Complaint's Factual Background Giving Rise to Plaintiffs' Claims[2]

John E. Rogers ("Rogers") joined Seyfarth as a partner in July 2003, and remained there until about May 2008.  [D.E. 32, ¶9].  Prior to joining Seyfarth, and while affiliated with Seyfarth, Rogers created certain entities to acquire "distressed Brazilian consumer debt" (collectively the "Rogers Entities"),[3] that Rogers then used to operate "his Brazilian debt collection business" by selling to third parties equity interests in certain of those entities as an investment, losses in which would create an income tax deduction.  *Id*. at ¶¶21, 27, 30, 31.  To operate "his Brazilian debt collection business," Rogers utilized Distressed Asset Tax Shelters ("DAD Tax Shelters") and Distressed Asset Trust Tax Shelters ("DAT Tax Shelters").  *Id*. at ¶18.  Rogers' "implementation and operation of his Brazilian debt collection business" – which involved "Rogers urging his clients, including Plaintiffs in 2003 and 2004, to purchase membership interests in various limited liability companies ('LLC Securities')" – "was a venture separate and distinct from his role as a partner at Seyfarth . . . from which he personally profited."  *Id*. at ¶¶30-31, 32-37.

After he created the Rogers Entities and had an agreement for the sale of the LLC Securities to third parties, Rogers would then utilize Seyfarth "to provide professional legal and tax services" to the Rogers Entities, and "to effect the sale and implementation of the alleged tax

---

[2]   The factual background in this section is drawn from Plaintiffs' Amended Complaint.  The allegations and characterizations therein are neither endorsed nor admitted by Seyfarth.

[3]   The Rogers Entities include Sugarloaf Fund, LLC ("Sugarloaf"), Warwick Trading, LLC ("Warwick"), Jetstream Business Limited ("Jetstream"), Portfolio Properties, Inc. ("Portfolio"), Beaumont Fund, LLC ("Beaumont"), Longmeadow Trading, LLC ("Longmeadow"), Queen Trading, LLC ("Queen Trading"), and Bodensee Fund, LLC ("Bodensee").  Beaumont and Longmeadow are named Plaintiffs, and Sugarloaf, Warwick, and Jetstream are named Defendants.  [D.E. 32, ¶¶ 5-6, 11-12].

benefits of the DAD/DAT Tax Shelters." *Id*. at ¶43. Plaintiffs allege that these services provided by Seyfarth to the Rogers entities were "specifically for purposes of benefitting Plaintiffs." *Id*. at ¶¶44, 47, 48, 51, 54, 78, 85, 165. According to the Amended Complaint, Rogers was affiliated with Seyfarth until May 2008 when Seyfarth forced Rogers to resign. *Id*. at ¶149. After leaving Seyfarth, Rogers continued to operate "his Brazilian debt collection business," and utilize certain of the Rogers Entities as tax shelters. *Id*. at ¶¶31, 108-32.

As a result of Plaintiffs' purchase of the LLC Securities, they allege that the "IRS has imposed and Plaintiffs have incurred tax penalties and interest with respect to their investment in the DAD Tax Shelters for the tax years 2003 through 2010." *Id*. at ¶161. Specifically, Plaintiffs allege that they "have suffered, and will continue to suffer, tax penalties as a result of [the] investment in the DAD Tax Shelters created and sold to Plaintiffs by Rogers . . . and implemented by Seyfarth and Rogers." *Id*. at ¶162.

## III.  Argument

Florida law provides a two-step analysis to establish whether this Court may exercise personal jurisdiction over a nonresident defendant. *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989); *see Wendt v. Horowitz*, 822 So. 2d 1252, 1257 (Fla. 2002).[4] The Court must first examine whether Florida's long-arm statute would provide jurisdiction over the nonresident defendant. If so, the Court must then determine "whether sufficient 'minimum contacts' are demonstrated to satisfy due process requirements." *Venetian Salami*, 554 So. 2d at 502 (citations omitted). Both parts must be satisfied for a court to exercise personal jurisdiction over a non-resident defendant. *Id*. The Amended Complaint is deficient in both respects.

---

[4] "The reach of Florida's long-arm statute is a question of Florida law." *Schwab v. Hites*, 896 F. Supp. 2d 1124, 1131 (M.D. Fla. 2012).

Based on Seyfarth's jurisdictional challenge (including the supporting affidavits), Plaintiffs have the burden of proving by affidavit that this Court has personal jurisdiction over Seyfarth, and that personal jurisdiction is proper. *Id.*

**A. *The Long-Arm Statute Does Not Provide for Specific Jurisdiction Over Seyfarth***

Florida's long-arm statute (§48.193) (the "Statute"), which is "strictly construed," sets forth the acts that will subject a foreign defendant to the specific jurisdiction of the Florida courts. *See Fraser v. Smith*, 594 F.3d 842, 846, n.8 (11th Cir. 2010).

The Amended Complaint alleges specific jurisdiction over Seyfarth pursuant to subsections (1)(a)1 (operating a business in the state), (1)(a)2 (committing a tort in the state) and (1)(a)6.a (causing injury to persons or property in this state while engaged in solicitation or service activities in this state) of the Statute.[5]  For the act to provide a basis for specific personal jurisdiction over the foreign defendant, the act itself must give rise to the cause of action.[6]

1. Seyfarth Did Not Commit a Tort in This State.

Under §48.193(1)(a)2, jurisdiction may be exercised where the cause of action "aris[es] from . . . [c]omitting a tortious act within this state."  A defendant need not be physically present in Florida to commit a tortious act in this state.  *See Wendt*, 822 So. 2d at 1260.  Jurisdiction may

---

[5]  Effective July 2013, the numbering of §48.193 was revamped.  This revision, however, had no effect on the substantive statutory language and acts identified in the long-arm statute at issue in this case.  The language in the prior version of the statute in subsections (1)(a), (1)(b) and (1)(f) mirrors the language now contained in §48.193(1)(a)1, 2 and 6, respectively.  Thus, the case law interpreting the prior subsections of the Statute applies equally to the revised subsections.

[6]  §48.193(1)(a) ("A person . . . submits himself . . . to the jurisdiction of the courts of this state for any cause of action ***arising from any of the following acts***: . . .") (emphasis added); *see Klayman v. Judicial Watch, Inc.*, 2013 WL 4780139, at *8 (S.D. Fla. Sept. 5, 2013) ("Although the term 'arising from' is somewhat broader than the concept of proximate cause, under Florida law there must nevertheless be some 'direct affiliation,' 'nexus,' or 'substantial connection' between the cause of action and the activities within the state.").

be conferred "through the nonresident defendant's telephonic, electronic, or written communications into Florida" so long as "the cause of action . . . arise[s] from the communications." *Id.* "Accordingly, there must be some 'connexity' that exists between the out-of-state communications and the cause of action such that the cause of action 'would depend upon proof of either the existence or the content of any of the communications . . . into Florida." *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005) (quoting *Carlyle v. Palm Beach Polo Hldgs., Inc.*, 842 So. 2d 1013, 1017 (Fla. Dist. Ct. App. 2003)).

For this Court to exercise personal jurisdiction over Seyfarth, the allegedly tortious conduct by Seyfarth "into Florida" identified in the Amended Complaint must give rise to Plaintiffs' malpractice claim against Seyfarth. *See Wendt*, 822 So. 2d at 1260. The gist of Plaintiffs' malpractice claim against Seyfarth is that an attorney-client relationship existed between Seyfarth and Plaintiffs because Seyfarth provided professional legal services to Rogers and certain of the Rogers Entities "for the benefit of Plaintiffs, which created a duty of care on the part of Seyfarth to Plaintiffs" (D.E. 32, ¶¶44, 47, 48, 51, 54, 78, 85, 165), and that Seyfarth allegedly breached its duty to Plaintiffs by (1) providing legal services "to both Plaintiffs and Rogers and his entities in DAD Tax Shelter transactions without advising Plaintiffs of the conflict of interest or acquiring a waiver of the conflict" (*id.* at ¶¶69-73), (2) "preparing instruments that did not qualify as promissory notes" (*id.* at ¶¶74-80), and (3) giving misleading and erroneous legal and tax advice (*id.* at ¶¶81-86). *Id.* at ¶¶47, 69, 79, 166. The Amended Complaint identifies the following specific conduct by Seyfarth that allegedly constitutes its breach of duties to Plaintiffs and gives rise to Plaintiffs' malpractice claim:

Keller Landsberg PA

Broward Financial Centre, 500 E. Broward Boulevard, Suite 1400, Fort Lauderdale, FL  33394

- drafting or preparing "documents to facilitate and memorialize Plaintiffs' purchase and/or investment in the DAD Tax Shelter" for the 2003 and 2004 purchases (the "2003 DAD Deal Documents" and "2004 DAD Deal Documents," respectively) (*id.* at ¶¶45, 49, 70, 82-83, 86, 104); (D.E. 33-3, Ex. C); (*id.* at 33-4, Ex. D);

- preparing "Form 1065 U.S. Income Tax Return of Partnership Income and Schedule K-1s for Plaintiffs' interest in Beaumont and Longmeadow" between 2004 and 2008 (*id.* at ¶¶52, 82, 84, 104); and

- preparing promissory notes for Warwick and Sugarloaf (*id.* at ¶¶74, 79, 86, 104).

Although Plaintiffs conspicuously failed to identify the state in which Seyfarth provided the above legal services, it can be none other than Illinois.

Seyfarth is a law firm headquartered in Illinois.  (Ex. 1, Woodford Aff. 3).  Although it has many offices, it has none in Florida.  *Id.* at ¶4.  Rogers worked out of Seyfarth's Illinois office.  [D.E. 32, ¶9]; (Ex. 2, Rogers Aff. 4, 7); (Ex. 1, Woodford Aff. 9).  As Plaintiffs essentially concede, the drafting and preparing of all documentation, including the 2003 and 2004 DAD Deal Documents, promissory notes, and any subsequent income tax forms, were drafted in Seyfarth's Illinois office (D.E. 32, ¶¶9, 43) – irrespective of the unsupported allegation that Seyfarth's services were provided for the "benefit of Plaintiffs" as alleged in the Amended Complaint.  *Id.* at ¶¶44, 48, 78; (Ex. 2, Rogers Aff. 15).  The documents drafted by Seyfarth were not drafted specifically for any person or entity in Florida, nor specifically intended to be used by any such person or entity in Florida.  (Ex. 2, Rogers Aff.  ¶¶8, 9-12, 15-16, 250.  Further, none of the documents drafted by Seyfarth involved or applied Florida law.  *Id.*  At no time, did a representative of Seyfarth travel to Florida for any purpose in connection with the legal services at issue in Plaintiffs' malpractice claim.  (Ex. 1, Woodford Aff. 13-15); (Ex. 2, Rogers Aff. 6).  Further, any bills generated by Seyfarth for its legal services were not sent to anyone in Florida.  (Ex. 1, Woodford Aff. 12).

In addition, Seyfarth took no actions directed to any of the Plaintiffs in Florida.  *Id.* at ¶¶11-15.  At the time of the investments referred to in the Amended Complaint (2003-2004), neither the Koretskys, nor International Video Distributors, LLC ("International Video") were clients of Seyfarth.  *Id.* at ¶10.  There are no engagement letters between Seyfarth and any of the Plaintiffs for the legal services identified in the Amended Complaint as relating directly to the investment transactions.  *See id.*  Any communication between Seyfarth and International Video was directed by Seyfarth to New Jersey.[7]  International Video is "a New Jersey limited liability company."  [D.E. 32, ¶4], *see id.* at D.E. 33-5, Ex. E, p.10 (identifying a New Jersey address for the company).  The same New Jersey address for International Video was identified in the 2004 K-1 – allegedly prepared by Seyfarth – issued by Beaumont to International Video.  (Ex. 2, Rogers Aff. 12, Ex. C).  And, the transaction documents allegedly drafted for International Video were drafted by Seyfarth with the intention of complying with, and applying Illinois law.  *Id.* at 16; *see, e.g.,* [D.E. 32, ¶77].[8]

The Plaintiff entities – Beaumont and Longmeadow – were neither located in nor had any connection with Florida.  The Amended Complaint alleges that Beaumont and Longmeadow were LLCs organized and controlled by Rogers, who lived and worked in Illinois during the relevant time period.  *Id.* at ¶¶5, 6, 9, 11, 28.e-f.  Indeed, the 2004 K-1 issued to Longmeadow identified an Illinois address for that entity.  (Ex. 2, Rogers Aff. 10, Ex. A).  The documents

---

[7]   As evidenced by Plaintiffs' own documents, the only Plaintiff that invested in Rogers' Brazilian debt collection business/tax shelters was International Video.  *See* [D.E. 33-3, Ex. C, p.12]; *id.* at D.E. 33-4, Ex. D, pp.27, 31, 82, 85; *id.* at D.E. 33-5, Ex. E, pp.10, 13.  The Koretskys did not invest in Rogers' Brazilian debt collection business in their individual capacities.  (Ex. 2, Rogers Aff. 13).

[8]   *See* [D.E. 33-3, Ex. C, pp.6, 10-11]; *id.* at D.E. 33-4, Ex. D, pp.28, 80, 85; *id.* at D.E. 33-5, Ex. E, p.11.

allegedly drafted by Seyfarth for these entities were also drafted by Seyfarth with the intention of complying with, and applying Illinois law.[9]  *Id.* at ¶16.  Further, upon Rogers selling certain membership interests in Beaumont to International Video, the 2004 K-1 issued by Queen Trading to Beaumont identified International Video's New Jersey address as Beaumont's address.  *Id.* at ¶11, Ex. B.

In 2006, Seyfarth did undertake to represent Michael Koretsky, individually along with his wife, for tax audit work based on a notice Koretsky received from the IRS about tax issues in the 2003 and 2004 tax years arising from deductions from the DAD transaction by Koretsky's LLC – representation that is not identified in the Amended Complaint.  (Ex. 1, Woodford Aff. 11); (Ex. 2, Rogers Aff. 17).  However, none of Seyfarth's actions during this representation, occurred in, or was directed to Florida in any way.  (Ex. 1, Woodford Aff. 11-12); (Ex. 2, Rogers Aff. 18-22).  Seyfarth's Conflicts Research Request issued in November 2006 identifies a Pennsylvania address for Michael Koretsky, which he identified as his "home address," (Ex. 2, Rogers Aff. 18-19, Exs. D, F), and Seyfarth's Illinois office as the location for the services provided by Seyfarth.  The firm's New Client Intake Form also identifies "Pennsylvania" as the "Matter Location."  *Id.* at ¶18, Ex. E.  All correspondence or communications (including the engagement and consent letters, as well as other correspondence) between Seyfarth and Michael Koretsky in connection with the 2006 representation was directed to Michael Koretsky at his "home address" in Yardley, Pennsylvania.  *Id.* at ¶¶19-22, Exs. F-I.[10]

---

[9]  *See supra* n.8; *see also* [D.E. 33-3, Ex. C, p.6]; *id.* at D.E. 33-4, Ex. D, pp.49-50, 76.

[10]  As for Frank Koretsky, Seyfarth never represented him as a client in any matters.  (Ex. 1, Woodford Aff. 10).  Because only International Video was an "investor" in Rogers' Brazilian debt collection business (not either of the Koretskys, personally), and Frank Koretsky was and is a member of International Video, any contact with Frank Koretsky would have been through

Plaintiffs' new allegations in the Amended Complaint relating to their own connections to Florida (D.E. 32, ¶¶4, 38, 39, 41, 134) are irrelevant to whether Seyfarth is subject to the specific jurisdiction of this Court for allegedly committing a tort in Florida.  None of the new allegations identifies conduct *by* Seyfarth *into Florida* that *gives rise* to Plaintiffs' malpractice claim.  The allegations that International Video has had "a significant presence in Florida" for 16 years, maintains a "hub" in Florida, and executed a membership purchase agreement for International Video "while in Florida," and that "a substantial portion of the initial investments were made effective in Florida" are unilateral actions by Plaintiffs – none of which is a basis of the malpractice claim against Seyfarth.  To "commit a tort" in Florida for jurisdictional purposes, it is the defendant's conduct into Florida that matters (not the plaintiff's), conduct that must give rise to the plaintiff's asserted claim.  *See Wendt*, *supra* pp.6-7.

The allegation that Seyfarth "knew" that the Koretskys operated International Video from Florida "for a significant portion each year" means nothing.  Plaintiffs have not alleged, and cannot in good faith allege, that Seyfarth took any actions, much less meaningful ones, toward Plaintiffs "while" they were in Florida that give rise to their malpractice claim.  The Amended Complaint shows that Seyfarth's actions giving rise to the alleged malpractice claim occurred in Illinois, and Seyfarth has established that all of its communications with Plaintiffs were directed to either New Jersey, Pennsylvania, or Illinois.  *Id*. at pp.7-10.  The allegations that Rogers took certain actions in Florida – including the vague, non-specific allegation that he began to market his "Brazilian debt collection business" to "potential taxpayer-clients" in Florida, including Plaintiffs, and that he "spoke with Plaintiffs via telephone and email in Florida" from 2007

---

International Video and directed to its location in New Jersey.  [D.E. 32, ¶4]; *see supra* n.7.

through 2010 – are not actions upon which Plaintiffs' have based their malpractice claim against Seyfarth. Plaintiffs' claim against Seyfarth is based on the firm's drafting of certain documents and providing certain legal advice between 2003 and 2004. *Id*. at pp.7-8. Further, Plaintiffs have conceded that Rogers' solicitation activities were activities separate and apart from his employment at Seyfarth (D.E. 32, ¶¶30-31), and thus that conduct cannot be imputed to Seyfarth or used to subject Seyfarth to the jurisdiction of this Court. Seyfarth has not purposefully directed any communications or actions into Florida from which Plaintiffs' malpractice claim arose, and thus the claim did not occur in Florida and lacks the required "connexity" within this state.

Simply put, Plaintiffs' malpractice claim against Seyfarth does not arise from any actions, correspondence, or communications into Florida – Seyfarth took no actions in Florida and the documents prepared by Seyfarth in Chicago were not specifically intended for use in Florida. Because Seyfarth's alleged conduct giving rise to the malpractice claim occurred in Illinois and was not directed to any of the Plaintiffs in Florida (if the Koretskys even were occasionally in Florida between 2003 and 2008), the Court lacks personal jurisdiction over Seyfarth.[11]

    2.   Seyfarth Did Not Cause the Requisite "Injury" to Support Jurisdiction Under §48.193(1)(a)6.

In the claim for malpractice against Seyfarth, the Amended Complaint alleges that Plaintiffs have suffered monetary damages, namely tax penalties and interest imposed by the

---

[11] *See Am. Torch Tip Co. v. Dykema Gossett PLLC*, 2011 WL 3171811, at *6 (M.D. Fla. July 8, 2011) (finding attorney's "communications into Florida and two trips to Florida in the course of representing Plaintiff in an out-of-state matter are insufficient to subject him to personal jurisdiction"), *report adopted* 2011 WL 3170282, at *1 (M.D. Fla. July 27, 2011); *Carlyle*, 842 So. 2d at 1017 (finding that the non-resident attorney was not subject to personal jurisdiction of the court where the plaintiff "failed to demonstrate that the causes of action alleged arose from the appellant's communications into Florida").

Keller Landsberg PA
Broward Financial Centre, 500 E. Broward Boulevard, Suite 1400, Fort Lauderdale, FL  33394

IRS.  [D.E. 32, ¶¶3, 107, 161-63, 170-72].  The Florida Supreme Court has established that subsection (1)(a)6 "contemplate[s] personal injury or physical property damage," and concluded that jurisdiction cannot exist under this subsection "for acts arising outside the state which cause financial injury within the state when no personal injury or physical property damage has occurred." *Aetna Life & Cas. Co. v. Therm-O-Disc, Inc.*, 511 So. 2d 992, 993, 994 (Fla. 1987). The Florida courts are clear that this subsection does not apply to situations in which only economic damages are suffered.[12]  Because the Amended Complaint only alleges that Plaintiffs have suffered economic injuries and based on the absence of any personal injury or property damage, there is no personal jurisdiction over Seyfarth under §48.193(1)(a)6.[13]

3.  Plaintiffs' Malpractice Claim Did Not Arise From Any Alleged Business Activities by Seyfarth in Florida.

To establish that a foreign defendant is carrying on a business in Florida for the purposes of the long-arm statute, "the activities of the defendant must be considered collectively and show a general course of business activity in the state for a pecuniary benefit." *Horizon Aggressive Growth, L.P.*, 421 F.3d at 1167 (quotation marks omitted).  Specific jurisdiction over a foreign defendant under this prong of the Statute is proper "only when the plaintiff's cause of action

---

[12] *See Prentice v. Prentice Colour, Inc.*, 779 F. Supp. 578, 585 (M.D. Fla.1991) ("The [Florida Supreme] Court held that the provisions of subsection (1)(f) do not apply to situations in which only *economic* damages are suffered within the state.") (emphasis in original); *Identigene, Inc. v. Goff*, 774 So. 2d 48, 49 (Fla. Dist. Ct. App. 2000) (reversing denial of motion to dismiss for lack of personal jurisdiction, finding that the plaintiff (Goff) "merely claimed economic loss" and "[f]or that reason, under *Aetna,* Goff was not entitled to obtain personal jurisdiction over Identigene under section 48.193(1)(f)(2)"); *see supra* n.5.

[13]   In paragraph 7 of the Amended Complaint, Plaintiffs also allege that "[a]t the time of plaintiffs' injury" Seyfarth had certain general business connections to Florida.  These alleged connections do not involve or relate to Plaintiffs and thus Plaintiffs' claim could not "arise" from these acts as required by the Statute to support specific jurisdiction. *See supra* n.6.

arises from or is directly related to a defendant's contacts with the forum state." *Verizon Trademark Servs., LLC v. The Producers, Inc.*, 810 F. Supp. 2d 1321, 1328 (M.D. Fla. 2011). This is not the case here.

All of the allegations in the Amended Complaint relating to Seyfarth's alleged "business" contacts with Florida (D.E. 32, ¶¶7-8) have absolutely no connection to this malpractice claim against Seyfarth.  Because Plaintiffs' claim does not arise from Seyfarth's alleged business activities in Florida identified in the Amended Complaint, these isolated business activities do not, and cannot qualify as conducting a business or business venture in Florida. *See Melgarejo v. Pycsa Panama, S.A.*, 537 Fed. App. 852, 862 (11th Cir. 2013) (affirming the dismissal for lack of personal jurisdiction, finding *inter alia* that the defendant did not engage in business sufficient to establish specific jurisdiction over the defendant because even though the defendant conducted "some business" through its Miami office, "there is nothing in the record linking those business operations with [the plaintiff's] cause of action in this case").

**B.  Exercising Specific Jurisdiction Over Seyfarth Violates Due Process.**[14]

The constitutional prong of *Venetian Salami* test "is controlled by United States Supreme Court precedent interpreting the Due Process Clause and imposes a more restrictive requirement" than the statutory prong.[15]  *Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201, 1207 (Fla. 2010) (quoting *Wendt*, 822 So. 2d at 1257) (quoting *Execu-Tech Bus. Sys., Inc. v. New Oji Paper*

---

[14]  Because Plaintiffs have failed to satisfy the threshold statutory prong of the *Venetian Salami* test, this Court need not reach the constitutional prong.  *See Melgarejo*, 537 Fed. App. at 862. Seyfarth provides this Court with the constitutional analysis to further support this Court's finding that Seyfarth is not subject to the specific jurisdiction of this Court under the Statute.

[15]  *See Venetian Salami Co.*, 554 So. 2d at 502 ("[E]ven though a nonresident may appear to fall within the wording of a long arm statute, a plaintiff may not constitutionally apply the statute to obtain jurisdiction in the absence of the requisite minimum contacts with the forum state.").

*Co.*, 752 So. 2d 582, 584 (Fla. 2000)).   Jurisdiction may be exercised over a nonresident defendant only if the nonresident "maintains certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id*. (internal quotations omitted).

       1.  <u>Seyfarth Lacks the Requisite Minimum Contacts With Florida</u>.

The minimum contacts analysis for specific jurisdiction focuses on "a 'relationship among the defendant, the forum, and the litigation.'" *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) ["*Helicopteros*"] (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).   To establish the requisite minimum contacts, "the defendant's contacts within the forum state must be such that [the defendant] should reasonably anticipate being haled into court there." *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 631 (11th Cir. 1996).   "[F]or a nonresident to anticipate being haled into a Florida court, it is essential that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within Florida, thus invoking the benefits and protections of its laws." *Biloki v. Majestic Greeting Card Co.*, 33 So. 3d 815, 821 (Fla. Dist. Ct. App. 2010) (relying on *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1995)).   "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (internal citations omitted).   Under this framework, Seyfarth could not reasonably anticipate being haled into a Florida court to defend against Plaintiffs' malpractice claim arising from its actions in Illinois on behalf of clients with whom it directed communications to Illinois, New Jersey and Pennsylvania.

Seyfarth did not deliberately or purposefully affiliate itself with Florida in connection with the Plaintiffs.  *See supra* §§III.A.1.-3.  Seyfarth did not exercise the "privilege of doing business" with the Plaintiffs in Florida, or "enjoy[] the benefits and protections of the laws" of Florida for any dealings with the Plaintiffs.[16]  (Ex. 1, Woodford Aff. 4-8, 13-15).  Seyfarth never committed an act, nor caused a consequence that lent any air of foreseeability to being haled into a Florida court for the legal services identified in the Amended Complaint.  *Id*. at ¶¶3-10, 13-16.  All of Seyfarth's "purposeful" actions in connection with the Plaintiffs, were conducted in, and directed to Illinois, New Jersey, and Pennsylvania – but not Florida.  *Id*. at ¶¶11-15; *see supra* §III.A.1.  All of the documents drafted or prepared by Seyfarth were completed in Illinois with no specific intention that the documents were drafted for persons or entities located in Florida, or for use in Florida.  (Ex. 2, Rogers Aff. 16); *see supra* §III.A.1.  The documents prepared that referenced Longmeadow, Beaumont, or International Video did not identify a Florida address for any of those entities, and employed Illinois law.  *See supra* n.8-9.  Further, all communications and correspondence with Michael Koretsky in connection with Seyfarth's 2006 representation of him and his wife (in their individual capacities), were directed by Seyfarth to Pennsylvania.  (Ex. 2, Rogers Aff. 19-22); (Ex. 1, Woodford Aff. 11-12).

It is simply not reasonably foreseeable that litigation by Plaintiffs against Seyfarth might arise in Florida.  (Ex. 1, Woodford Aff. 16); *see Thomas v. Brown*, 504 Fed. Appx. 845, 848-49 (11th Cir. Jan. 23, 2013) (affirming dismissal of complaint for lack of jurisdiction over out-of-state law firm and its shareholders because they lacked sufficient minimum contacts with Florida where the representation occurred outside of Florida, the defendants did not have an "office,

---

[16] *See Burger King*, 471 U.S. at 476; *Hanson*, 357 U.S. at 253.

Keller Landsberg PA
Broward Financial Centre, 500 E. Broward Boulevard, Suite 1400, Fort Lauderdale, FL  33394

telephone, bank account, or property of any kind in the state of Florida," they did "not market themselves to Florida and did not conduct any matters related to this lawsuit in Florida," they took no case-related travel to Florida, no bills were mailed to Florida, and no agreements were signed in Florida); *Am. Torch Tip Co.*, 2011 WL 3171811, at \*6, *supra* n.11; *Harris v. Shuttleworth & Ingersoll, P.C.*, 831 So. 2d 706, 709 (Fla. Dist. Ct. App. 2002) (affirming dismissal for lack of personal jurisdiction, finding "it was not reasonably foreseeable that Shuttleworth [(a non-resident law firm)] would be involved in Florida litigation when the services it provided related exclusively to Iowa property" in connection with the creation of a trust by the law firm in Iowa where the trust property was located in Iowa).[17]

2.  Exercising Specific Jurisdiction Over Seyfarth Is Not Reasonable.

The United States Supreme Court has added a "reasonableness" determination to its minimum contacts analysis. *Internet Solutions Corp*, 39 So. 3d at 1205; *see Madara v. Hall*, 916 F.2d 1510, 1517 (11th Cir. 1990).   In determining whether exercising jurisdiction over a nonresident defendant offends "traditional notions of fair play and substantial justice," a court should consider:  (1) the burden on the defendant in defending the lawsuit in the forum state; (2) the interests of the forum State adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief, (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies;" and (5) "the shared interest of the several States in

---

[17]  It is not sufficient that the Koretskys are or were "residents" of Florida, or that International Video "has a significant presence in Florida."  [D.E. 32, ¶¶1-2, 4].  To have minimum contacts with Florida, "[t]he defendant must have 'purposefully availed himself' or 'purposefully directed' his activities towards the forum state and its residents."  *Miot v. Kechijian*, 830 F. Supp. 1460, 1463 (S.D. Fla. 1993).  The Supreme Court has clearly mandated that the "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."  *Helicopteros*, 466 U.S. at 417.

Keller Landsberg PA
Broward Financial Centre, 500 E. Broward Boulevard, Suite 1400, Fort Lauderdale, FL  33394

furthering fundamental substantive social policies." *Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

This Court's exercise of personal jurisdiction over Seyfarth would not only offend traditional notions of justice and fair play, it would blatantly contravene *any* such notion. Defending this action in Florida would place an unreasonable burden on Seyfarth. Seyfarth does not have an office, or any agents in Florida. (Ex. 1, Woodford Aff. 4-8). The alleged conduct giving rise to Plaintiffs' claim against Seyfarth occurred in Illinois – with absolutely no actions by Seyfarth occurring in, or directed toward Plaintiffs in Florida. *Id*. at ¶¶9, 13-15; (Ex. 2, Rogers Aff. 6-12, 15-16, 23-25); *see supra* §III.A.1. Any Seyfarth persons with knowledge of the events described in the Amended Complaint are located in Illinois, as are co-defendants Rogers, Rogers and Associates, and the Rogers Entities (Warwick, Sugarloaf, and Jetstream). (Ex. 2, Rogers Aff. 2-3, 26-27, 33, 37, 42, 47).

In addition, Florida has a limited interest in this litigation. Although Plaintiffs have alleged that International Video has a "hub" in Florida (though not even headquartered there), and that the Koretskys operated International Video "while in Florida" for a "significant portion of each year," (D.E. 32, ¶4) this case does not involve the operation of International Video. It is about investments by the company in certain tax shelters. Further, during the operative time frame (2003-2004), the Koretskys were not full-time residents of Florida, and International Video was (and is) a New Jersey corporation. In addition, the fact that Michael Koretsky apparently unilaterally took a document sent to him in some other state and signed a membership purchase agreement for International Video while in Florida in November 2003 (*id*. at ¶38) (which is not the basis of, and does not give rise to Plaintiffs' claims against Seyfarth or the other

Keller Landsberg PA

Broward Financial Centre, 500 E. Broward Boulevard, Suite 1400, Fort Lauderdale, FL  33394

Defendants) does not support a finding that Florida has any meaningful interest in this litigation. Illinois has the greatest interest in adjudicating this dispute. *See supra* §III.A.1.

To obtain the most convenient and effective relief for Plaintiffs and the judicial system, Plaintiffs should have filed this action in Illinois.   The underlying actions giving rise to Plaintiffs' claim against Seyfarth occurred mainly, if not exclusively in Illinois. *See id.* Seyfarth (as well as the Rogers, Rogers & Associates and the Defendant Rogers Entities) are subject to personal jurisdiction in Illinois.   (Ex. 1, Woodford Aff. 17); (Ex. 2, Rogers Aff. 26, 33, 37, 42, 47).   The transaction documents prepared by Seyfarth apply Illinois law, with most requiring the disputes arising out of the agreements to be litigated in Illinois.[18] *See supra* n.8-9; (Ex. 2, Rogers Aff. 16).  Illinois law applies to, and governs Plaintiffs' malpractice claim against Seyfarth.[19]  In short, Florida has little to no interest in resolving this controversy.

Defending this suit in Florida places a tremendous burden on Seyfarth and the interests of both Florida and the Plaintiffs in forcing Seyfarth to defend the suit here are extremely tenuous. Even if Plaintiffs had satisfied the Florida long-arm statute, which they have not, this Court must refrain from exercising jurisdiction over Seyfarth for failure to satisfy Constitutional due process and should transfer it to the Northern District of Illinois under 28 U.S.C. §1406(a), or dismiss the Plaintiffs' Amended Complaint for lack of jurisdiction. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962) (holding transfer is authorized pursuant to §1406(a) where there is no

---

[18]  *See supra* n.8; [D.E. 34-3, Ex. C, p.26]; *id.* at D.E. 34-4, Ex. D, pp.14-15.

[19]  *See Topp, Inc. v. Uniden Am. Corp.*, 483 F. Supp. 2d 1187, 1191 (S.D. Fla. 2007) ("A federal district court sitting in Florida and deciding a tort claim is required by Florida choice-of-law rules to apply the 'most significant relationship test.'"); *Salerno v. Auto Owners Ins. Co.*, 2006 WL 2085467, at *3 (M.D. Fla. July, 25 2006) ("'Florida law views legal malpractice as a personal tort . . . .'") (quoting *Cowan Liebowitz & Latman, P.C. v. Kaplan*, 902 So. 2d 755, 758 (Fla. 2005)).

personal jurisdiction over the defendant(s) and also no proper venue); *see Miller*, 289 F. Supp. 2d at 1337, *supra* n.1; *Mold-Ex, Inc. v. Mich. Tech. Reps., Inc.*, 2005 WL 2416824, at *6 (N.D. Fla. Sept. 30, 2005) (finding that Court lacked personal jurisdiction over the defendant, and concluding that, pursuant to §1406(a), "the case should be transferred to the United States District for the Eastern District of Michigan where [the defendant] is a resident and subject to personal jurisdiction").

## C.  *Florida's Long-Arm Statute Does Not Provide for General Jurisdiction Over Seyfarth*

The Amended Complaint also attempts to allege general jurisdiction over Seyfarth pursuant to subsection (2) of the Statute.  Under this provision, a foreign defendant is subject to the jurisdiction of the Florida courts if the defendant "is engaged in substantial and not isolated activity within this state, . . . whether or not the claim arises from that activity."  "The reach of this provision extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment."  *Fraser*, 594 F.3d at 846.  Thus, whether Seyfarth is subject to the general jurisdiction of this Court is limited to whether the Court's exercise of jurisdiction over Seyfarth "would exceed constitutional bounds."  *Id.*

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, ---- U.S. -----, 131 S. Ct. 2846, 2851 (2011) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 317 (1945)); *see Daimler AG v. Bauman*, ---- U.S. -----, 134 S. Ct. 746, 761 (2014.  The Supreme Court has explained that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there,"

which includes for a corporation, "the place of incorporation and principal place of business" – "paradigm all-purpose forums." *Daimler*, 134 S. Ct. at 760.  The Court noted that "in an exceptional case . . . a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Id*. at 761, n.19.  Thus, "[a] foreign corporation cannot be subject to general jurisdiction in a forum unless the corporation's activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1205 (11th Cir. 2015).

Plaintiffs' allegations of Seyfarth's connections with Florida are not "so continuous and systematic" to render it "essentially at home" in Florida.  *Goodyear*, 131 S. Ct. at 2851.  Assuming *arguendo* that (for the purpose of this Motion) Plaintiffs' allegations are true, Seyfarth's alleged connections are limited to:  (i) 19 of its lawyers admitted to The Florida Bar, (ii) having "represented a Fortune 500 company in connection with a $500 million real estate expansion" of the company's Florida campus, and "an extensive number of other corporate, real estate and other types of transactions in Florida" or "pertaining" to Florida, (iii) having Florida based clients, (iv) information from its website that Seyfarth has the "4th largest Real Estate practice in the United States," that Seyfarth represented a corporation in its acquisition of a toy and consumer company located in Florida, and that shows 74 blog posts "that in some manner relate to Florida,"  (v) a 2015 press statement that Seyfarth has hired midlevel associates from large firms in Florida, (vi) its lawyers appearing in Florida courts 147 times since 2013 (and 270 times since 2010), and (vii) "solicit[ing] business in Florida."  [D.E. 32, ¶8].  Plaintiffs relied on

Keller Landsberg PA
Broward Financial Centre, 500 E. Broward Boulevard, Suite 1400, Fort Lauderdale, FL  33394

these same alleged Florida connections in their Motion for Leave to Conduct Jurisdictional Discovery and to Stay (D.E. 25, p.4), with the Court concluding that "Plaintiffs have not made any colorable showing that the Court has general personal jurisdiction over the Defendants." [D.E. 26].

These alleged connections are indeed insufficient because all but two of the allegations do not even require Seyfarth to conduct any activities in Florida. Because Seyfarth does not have any Florida offices (Woodford Aff. 4), its 19 lawyers do not work out of Florida, but merely have the license to conduct legal work in Florida if necessary. Seyfarth manages its work for any Florida clients, as well as conducts any transactions relating or "pertaining" to Florida out of one of its 10 locations in the United States, thereby negating any jurisdictional nexus between Florida and the activities identified in subsection (i) through (v) above. At best, Seyfarth's alleged contacts with Florida are limited to its periodic appearances in Florida courts on behalf of its clients, and soliciting business from Florida clients. Such alleged connections with Florida (that are wholly unrelated to Plaintiffs) are insufficient to satisfy the demanding "at home" due process standard to subject Seyfarth to the general jurisdiction of this Court for the malpractice claim asserted against it by Plaintiffs. *See, e.g. Carmouche*, 789 F.3d at 1204 (affirming dismissal of a corporate defendant for lack of personal jurisdiction despite the fact that the defendant had a Florida bank account, two Florida addresses, purchased insurance from Florida companies, filed a UCC financing statement with the Florida Secretary of State, joined a non-profit organization based in Florida, and consented to specific jurisdiction in the Southern District of Florida "for all lawsuits arising out of its agreement with Carnival"); *Associated Transp. Line v. Productos Fitosanitarios Proficol El Carmen, S.A.*, 197 F.3d 1070, 1075 (11th

Cir. 1999) ("General jurisdiction has been found lacking even where a company had employees, agencies and salespeople regularly in the forum; where the company was qualified to do business in the forum; and where it regularly solicited business and derived more than 26% of its income from the forum."); *Fraser*, 594 F.3d at 847 (affirming dismissal of claims for lack of personal jurisdiction finding insufficient basis to exercise general personal jurisdiction over foreign defendant where the defendant "solicited business in Florida as part of its general effort to attract customers" through limited advertising in Florida, and the existence of a company website "that gives information about a company and its products"); *Bluewater Trading LLC v. Fountaine Pajot, S.A.*, 2008 WL 2705432, at *4 (S.D. Fla. July 9, 2008), *aff'd* 335 Fed. Appx. 905 (11th Cir. 2009) (affirming dismissal of the manufacturer for lack of personal jurisdiction despite the fact that the manufacturer "places advertisements in magazines that are distributed in Florida" and communicated with a Florida corporation "via email approximately ten times per week").

## IV.   Venue is Not Proper in This District[20]

Venue is proper in this District if (1) "any defendant resides" in this District where "all defendants are residents of th[is] State," (2) "a substantial part of the events or omissions giving rise to the claim occurred" in this State, or (3) "there is no district in which an action may otherwise be brought," then if "any defendant is subject to the court's personal jurisdiction with respect to such action."  28 U.S.C. §1391(b)(1)-(3).  The burden of establishing that venue in this District is proper is on Plaintiffs.  *Hemispherx*, 669 F. Supp. 2d at 1356.  The cure for venue defects is governed by 28 U.S.C. §1406, which provides that if venue is improper (i.e., the case

_____

[20]  If venue is improper, this case may be transferred or dismissed, dispensing with the need for this Court to resolve the issue of whether Seyfarth is subject to the jurisdiction of this Court.  *See Silver v. Karp*, 2014 WL 4248227, at *2 (S.D. Fla. Aug. 27, 2014).

was filed in "the wrong division or district"), the Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." §1406(a).   In short, venue is not proper in this District (or in any District in Florida), and the Court should either transfer it to the Northern District of Illinois or dismiss this action.

Plaintiffs allege that venue is proper in this District under §1391(b)(2) because "a substantial part of the acts complained of in this Complaint and resulting harm occurred in the district."   [D.E. 32, ¶15].[21]   The new allegations in the Amended Complaint attempting to connect Seyfarth's actions to Florida (D.E. 32, ¶¶4, 7, 15, 38, 39, 41, and 134) are insufficient to establish that venue is proper in this District.

In analyzing venue under §1391(b)(2), the Eleventh Circuit established that "[o]nly the events that directly give rise to a claim are relevant" and "only those locations hosting a 'substantial part' of the events are to be considered."   *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003).   The Court highlighted that "the statute protects defendants, and Congress therefore 'meant to require courts to focus on relevant activities of the defendant, not of the plaintiff.'"   *Id.* (quoting *Woodke v. Dahm*, 70 F.3d  983, 985 (8th Cir. 1995)); *see Hemispherx*, 669 F. Supp. 2d at 1357, 1359; *Silver*, 2014 WL 4248227, at *3.

In this case the alleged wrong committed by Seyfarth is the improper drafting of the 2003 and 2004 DAD Deal Documents, certain tax return documents, and promissory notes, as well as providing certain legal advice between 2003 and 2004.   *See supra* §III.A.1, pp.7-8.   The "substantial part" of the allegedly wrongful conduct by Seyfarth giving rise to Plaintiffs'

---

[21]   Plaintiffs also allege that venue is proper in this District because two of the Plaintiffs (the Koretskys) reside in the District.   *Id.*   The domicile of the Plaintiffs is not relevant to the venue analysis.   *See* §1391(b); *see also Hemispherx*, 669 F. Supp. 2d at 1359 ("The focus of a venue inquiry is on the defendant and any actions taken by the defendant.").

Keller Landsberg PA
Broward Financial Centre, 500 E. Broward Boulevard, Suite 1400, Fort Lauderdale, FL  33394

malpractice claim against it occurred in Illinois – with Seyfarth taking no purposeful or direct actions in, or toward Plaintiffs in Florida. *Id*. at §III.A.1.[22]

Further, the allegations in the Amended Complaint relating to Florida do not show that a substantial part of the events occurred in Florida. International Video's presence and actions in Florida (D.E. 32, ¶¶4, 38, 39, 134) are irrelevant to this Court's venue analysis. The venue analysis focuses on the actions of the Defendants. *See Jenkins*, 321 F.3d at 1371; *Hemispherx*, 669 F. Supp. 2d at 1357, 1359; *Silver*, 2014 WL 4248227, at *3. Seyfarth's knowledge that the Koretskys operated International Video in Florida for a portion of each year (D.E. ¶39) does not constitute an act or omission, and does not "directly give rise" to Plaintiffs' claim against Seyfarth or those against the other Defendants. *See Jenkins*, 321 F.3d at 1371. Similarly, the allegations that Rogers marketed the DAD Tax Shelters in Florida (D.E. 32, ¶41), and that Rogers spoke with Plaintiffs "via telephone and email in Florida" between 2007 and 2010 (*id*. at ¶134) are not actions that "directly give rise" to Plaintiffs' claims against the Defendants. *See supra* pp.11-12.[23]

In addition, Plaintiffs' reliance on the place of their alleged injury to support venue in this District is misplaced.[24] As the *Jenkins Brick* Court emphasized, the venue analysis under

---

[22] Where a plaintiff's allegation is challenged, "the court may then examine facts outside of the complaint to determine whether venue is proper." *Hemispherx*, 669 F. Supp. 2d at 1356.

[23] Plaintiffs also allege that "a substantial portion of the initial investments were made effective in Florida." [D.E. 32, ¶39]. The only specific allegation to support this conclusory statement, however, is that the 2003 agreement was signed by Michael Koretsky in Florida. Because this allegation is "conclusory, not well pleaded, and not entitled to a presumption of truth," it does not support venue here. *Silver*, 2014 WL 4248227, at *3 (relying on *Ashcroft v. Iqbal*, 556 U.S. 662, 679-81 (2009)).

[24] Seyfarth assumes for the purposes of this Court's venue analysis only that Plaintiffs were "injured" in this District as alleged in paragraph 15 of the Amended Complaint.

§1391(a)(2) focuses on the activities of the defendant, not the plaintiff.  321 F.3d at 1371.  In doing so, the *Jenkins Brick* Court explicitly "approve[d] of" the Eighth Circuit's analysis in *Woodke*.  In *Woodke*, the Eighth Circuit – finding that "Congress meant to require courts to focus on the relevant activities of the defendant" – rejected the argument that the location of the plaintiff's economic harm satisfied §1392(a)(2), despite the harm being a necessary part of the claim.  70 F.3d at 985.  The *Woodke* Court stated that "if Congress had wanted to lay venue where the plaintiff was residing when he was injured, it could have said so expressly."  *Id*.  Thus, under *Jenkins Brick*, venue is not proper in this District under §1391(b)(2).[25]

Venue is also not proper under either of the remaining provisions of §1391.[26]  Subsection (b)(1) permits venue in this District only where ***all*** the Defendants are "residents" of Florida.  In the Amended Complaint, Plaintiffs have conceded that Defendant Rogers is "a resident and citizen of Illinois."  [D.E. 32, ¶9]; (Ex. 2, Rogers Aff. 3).  The fact that Rogers "resides" only in Illinois, precludes a finding that venue is proper under §1391(b)(1).  *See* §1391(c)(1) (stating that "a natural person . . . shall be deemed to reside in the judicial district in which that person is

---

[25]  *See Hemispherx*, 669 F. Supp. 2d at 1358, 1359 (finding venue improper because "[o]nly those events that have a close nexus to the wrong alleged . . . are the proper bases for venue," and the plaintiff "failed to allege that either the wrong or any actions or events having a close nexus to the wrong, occurred with the Southern District of Florida") (internal citations omitted); *Silver*, 2014 WL 4248227, at *3 (dismissing the action for improper venue where "Plaintiff's Complaint contains no well-pleaded allegations connecting any of the Defendants to the Southern District of Florida," and Defendants "contradicted these allegations with affidavits"); *Pawlik v. AmeriLife Group, LLC*, 2014 WL 793080, at * 8 (S.D. Fla. Feb. 25, 2014) (finding venue improper in the Southern District, stating "the Complaint and Plaintiff's affidavit contain bare-boned allegations and assertions regarding venue being proper in the Southern District of Florida").

[26]  "When a party challenges venue, the court is required to determine whether the case falls within one of the categories set out in 28 U.S.C. §1391(b)."  *Pawlik*, 2014 WL 793080, at *6.

Keller Landsberg PA

Broward Financial Centre, 500 E. Broward Boulevard, Suite 1400, Fort Lauderdale, FL  33394

domiciled"). Because **all** of the Defendants do not reside in Florida, venue is not proper under §1391(b)(1).

Finally, venue is not proper under §1391(b)(3). The applicability of this subsection is triggered only where "there is no district in which an action may otherwise be brought." This action may have been originally filed in the Northern District of Illinois. Venue is proper in that District under §1391(b)(1) because Rogers resides in Illinois, and because all the Defendant entities reside (as defined by §1391(c)(2)) in Illinois. (Ex. 1, Woodford Aff. 17); (Ex. 2, Rogers Aff. 3, 33, 37, 42, 47). Venue is also proper under §1391(b)(2) because a substantial portion of Seyfarth's actions giving rise to Plaintiffs' malpractice claim against it occurred in Illinois (as well as the conduct of the remaining Defendants for the claims asserted against them). *See supra* §III.A.1. Because venue is proper in Illinois under §§1391(b)(1) and/or (b)(2), subsection (b)(3) is not triggered, and thus venue cannot be placed in this District under that subsection.

In sum, because venue is improper in this District, Seyfarth respectfully requests that this Court transfer the action to the Northern District of Illinois. *See* §1406(a) (stating the Court may dismiss or transfer the action upon a finding of improper venue). The U.S. Supreme Court has held that a transfer pursuant to §1406(a) is proper even when there is both a lack of personal jurisdiction and improper venue, as is the case here. *Goldlawr, Inc.,* 369 U.S. at 466-67.

The Northern District of Illinois is a proper forum for this action. "A transferee court must sit within a district in which the case originally could have been brought, both with respect to venue and personal jurisdiction." *Hemispherx*, 669 F. Supp. 2d at 1359 (quotations omitted). Because all the Defendants reside in that District, and/or a substantial portion of the events giving rise to Plaintiffs' claims occurred in Illinois, and because the Defendants are subject to the

personal jurisdiction of the courts in the Northern District of Illinois, Plaintiffs could have originally filed this action in that District, rendering it a proper venue for this action.

## V.     Conclusion

Based on the above, Seyfarth respectfully requests that the Court enter an Order transferring this action to Northern District of Illinois under §1406(a), dismissing the Amended Complaint as to Seyfarth for lack of jurisdiction, and/or dismissing the Amended Complaint for improper venue, and granting such other relief as this Court deems just and proper.

### Local Rule 7.1(a)(3) Certificate Of Good Faith Conference

I hereby certify that undersigned counsel has conferred with counsel for Plaintiffs and counsel for Defendants John E. Rogers, Rogers & Associates, Jetstream Business Limited, Warwick Trading, LLC and Sugarloaf Fund, LLC (the "Rogers Defendants"), the parties affected by the relief sought in this motion, in a good faith effort to resolve the issues raised in the motion, and has been authorized to represent that Plaintiffs object to the relief sought, and that Rogers Defendants agree with, and join in the relief sought in this motion.

Respectfully submitted,

By:  */s/ D. David Keller*  
    D. David Keller (FBN: 288799)  
    Maria N. Vernace (FBN: 817171)  
    Email:  David.Keller@kellerlandsberg.com  
    Email:  Maria.Vernace@kellerlandsberg.com  
    Email: Laura.Kelly@kellerlandsberg.com  
    Keller Landsberg PA  
    Broward Financial Centre  
    500 East Broward Boulevard, Suite 1400  
    Fort Lauderdale, FL 33394  
    Telephone:   (954) 761-3550  
    Facsimile:    (954) 525-2134  
    *Counsel for Defendant Seyfarth Shaw LLP*

## Certificate of Service

I HEREBY CERTIFY that on this **9th** day of **November, 2015,** I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to Charles Lichtman, Esq. and Robbie T. Boone, Esq., Berger Singerman LLP (*Counsel for Plaintiffs*), 350 East Las Olas Boulevard, Suite 1000, Fort Lauderdale, Florida 33301, telephone:   (954) 525-9900, e-service:   clichtman@bergersingerman.com, rboone@bergersingerman.com, and drt@bergersingerman.com, and William M. Martin, Esq., Peterson Bernard (*counsel for Defendants John E. Rogers, Rogers & Associates, Jetstream Business Limited, Warwick Trading, LLC, and Sugarloaf Fund, LLC*), 707 S.E. Third Avenue, Suite 500, Ft. Lauderdale, Florida 33316, Telephone:  (954) 763-3200, e-service:  Bmartin@ftl-law.com.


_____*/s/ D. David Keller*_____
D. David Keller

Keller Landsberg PA
Broward Financial Centre, 500 E. Broward Boulevard, Suite 1400, Fort Lauderdale, FL  33394